2010  ME  90

**STATE of Maine**

**v.**

**Vladek FILLER.**

Supreme Judicial Court of Maine.

Argued: May 19, 2010.

Decided: Sept. 9, 2010.

Michael E. Povich, District Attorney, Mary N. Kellett, Asst. Dist. Atty. (orally), Prosecutorial District No. VII, Ellsworth, ME, for the State of Maine.

Neil L. Fishman, Esq. (orally), Freeport, ME, for Vladek Filler.

Panel: SAUFLEY, C.J., and LEVY, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] The State of Maine appeals from a judgment entered in the Superior Court (Hancock County, *Cuddy, J.*) granting Vladek Filler's motion for a new trial pursuant to M.R.Crim. P. 33 following a jury verdict finding him guilty of one count of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2009), and two counts of assault (Class D), 17–A M.R.S. § 207(1)(A) (2009). Filler cross-appeals, contending, among other things, that the Superior Court erred by excluding certain evidence that was central to his theory of the case and by denying his motion for judgment of acquittal pursuant to M.R.Crim. P. 29 because the evidence was insufficient to support his convictions. We affirm the judgment and remand for a new trial.

## I. BACKGROUND

[¶ 2] This case arises from allegations that Vladek Filler physically and sexually assaulted his wife on several occasions between December 2005 and April 2007. Filler was indicted on and pleaded not guilty to five counts of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A), and two counts of assault (Class D), 17–A

M.R.S. § 207(1)(A). The case proceeded to a jury trial.

[¶ 3] Filler's defense was premised on the theory, introduced in his opening statement, that his wife fabricated or exaggerated her allegations against him to gain an advantage in an anticipated custody case involving their minor children:

> The marriage, as [the prosecutor] described, deteriorated. The parties argued. Mr. [Filler and his wife] argued. They argued. They had disputes about what was going to happen in the marriage. The marriage started to dissolve. They talked about separation. [Filler's wife] said, "No. I don't want to do anything that takes me away from my children. I'll do anything for my children."

> As time progressed into January and February of 2007, Vladek began to talk of moving to the state of Georgia where his mother and sisters were relocating, planning to relocate. He wanted to take the kids. [His wife] said no. That's okay. Custody dispute, now. But the next thing Mr. Filler knew, he was charged with a series of horrific crimes, horrific crimes, that are based exclusively only on the testimony of his wife, without physical evidence, any physical evidence, without any eyewitnesses but the household kids and often extended family; allegations of a story that happened when separation was happening, when she learned of this planned move to Georgia.

[¶ 4] Filler wove this theory into the cross-examination of his wife when he attempted to impeach her credibility by emphasizing that her allegations arose after she recognized that there would be a custody dispute. The State, however, objected to Filler's attempts to question her regarding the legal steps she took to obtain a court order granting her custody of the children. In fact, she had sought orders regarding parental rights and responsibilities in protection from abuse complaints filed in April 2007 and December 2007 and in a divorce complaint. The court sustained the State's objection based on its concern that the evidence would result in the "litigat[ion of] the protection issues and also the custody issues, and that's not what this case is about." Thus, Filler was prevented from establishing that his wife had initiated a series of legal actions to secure legal custody of the children after she had alleged the incidents of abuse that resulted in Filler's prosecution.

[¶ 5] After the State rested, Filler moved for judgment of acquittal for each of the counts, arguing that there was insufficient evidence to support his conviction. The court opted to reserve decision on the motion, and Filler proceeded to present the testimony of his witnesses, which included Filler's son. Filler did not testify. He renewed his motion for judgment of acquittal after the close of evidence, and the court denied the motion.

[¶ 6] In his closing argument, Filler urged the jury to disbelieve his wife's testimony, suggesting that her claims of domestic violence emerged only at the end of their marriage when a child custody dispute was inevitable. Filler further argued that she "began hedging her bets in the child custody battle" by telling "tales to friends; tales, ladies and gentlemen." He also noted that "[t]here's nothing wrong with wanting to keep your kids ... [and] with being desperate in a child custody situation [but] [t]here is something wrong with using the criminal process to do so."

[¶ 7] In her rebuttal argument, the prosecutor responded directly to Filler's argument that his wife had fabricated her claims in order to gain an advantage in child custody proceedings:

> The evidence that you have is the evidence of the witnesses and the docu-

ments that have been presented, and those primarily include the testimony of [Filler's wife]. And what I'm asking you to do is not to assume facts that aren't in evidence, and what the defendant is asking you to do is to accept the evidence of the good times and try to say that—that that is—negates the criminal conduct that the State alleges, the birthday picture, all that, where, on the other hand he wants you to believe [her] on the evidence of the dysfunctional relationship, and somehow, in all that, you're supposed to somehow—*I would ask you where the evidence is to back up his statement that he stated in both his opening and his closing that this is a marriage that was ending, this is a child custody, this was a first step in a child custody fight. Where is one piece of evidence about that?*

. . . .

The suggestion that [Filler's wife] has made this all up just for the purpose of getting ahead in the child custody, where is the evidence of that?

. . . .

Custody dispute? Where is that?

(Emphasis added.) Filler objected to the State's rebuttal and moved for a mistrial. He argued, among other things, that the State had improperly encouraged the jury to use the absence of evidence regarding the marriage ending and a child custody

dispute—evidence that had been excluded based on the State's objection—as a reason to reject Filler's defense. Although the court expressed concern about this aspect of the State's rebuttal argument,[1] the court did not issue a curative instruction and denied Filler's motion.

[¶ 8] The jury returned a guilty verdict on Counts I (gross sexual assault), II (assault), and VII (assault), and a not guilty verdict on the remaining four counts of gross sexual assault. Filler then moved for a judgment of acquittal, arguing that there was insufficient evidence to support his convictions. In the alternative, he moved for a new trial based on prosecutorial misconduct and the court's error in excluding from evidence the protection from abuse complaints and the divorce complaint, initiated by his wife.

[¶ 9] The court granted Filler's motion for a new trial on the basis that the prosecutor's rebuttal argument referenced the absence of evidence indicating a child custody dispute among the parties:[2]

The Court excluded from evidence facts relating to the child custody dispute that was pending during the time of the alleged criminal conduct. Nonetheless, on[e] of [the] major points of the prosecution in its closing argument was on this missing evidence on behalf of the Defendant of the child custody dispute or fight. Having reviewed in detail the

---

1. In ruling on the motion for a mistrial, the court stated:

   The court was concerned about the closing argument dealing with the issues that the court had precluded you from pursuing; nonetheless, the court is inclined to—is disposed to deny your motion for mistrial based on the totality of the presentations that have been made here, but the court does have concern.

2. In addition, Filler raised several other instances of alleged prosecutorial misconduct in support of his motion for a new trial. He

argued that the prosecutor impermissibly made comments that (1) appealed to the jury's emotions; (2) were based on facts not in evidence; (3) shifted the burden of proof to Filler; (4) vouched for the veracity of the evidence; (5) personalized the case; (6) misstated the law; (7) evoked the jury's passions, prejudices, and biases; and (8) obscured the issues. Because we conclude that granting the motion for a new trial was appropriate on other grounds, we do not consider these arguments in this appeal.

closing arguments of counsel in the context of the jury verdict, the Court is satisfied that the interest of justice (Rule 33 M.R.Crim.P.) require that the Motion for a New Trial be and is hereby GRANTED.

[¶ 10] The trial court's decision did not explicitly deny Filler's motion for judgment of acquittal; however, based on the court's decision to grant a new trial, we treat the motion for judgment of acquittal as denied by implication. The State filed a motion for further findings of fact and conclusions of law, seeking a description of the evidence relating to child custody that was excluded and the basis for the ruling. The State also sought clarification as to whether the issue of child custody was developed in its closing argument or in its rebuttal argument. In response, the court issued an order that cited the specific pages of the trial transcript that necessitated a new trial:

> A review of the verdict rendered in light of the rebuttal arguments of the State found at pages 45, 46 and 51, persuaded the Court ... that the interest of justice required that the Defendant have a new trial. The focus of the State's arguments were on facts not presented by the Defendant as a result of rulings by the Court during the trial, thereby creating the high likelihood of unfairly prejudicing the Defendant in the eyes of the jury.

The three pages of transcript cited by the court contain the portions of the prosecutor's rebuttal argument quoted above. The State's appeal and Filler's cross-appeal followed.

## II. DISCUSSION

[¶ 11] We consider, in turn, (A) both parties' arguments associated with the court's judgment granting Filler's motion for a new trial, and (B) Filler's argument that, because the evidence was insufficient to support his convictions, the court erred in denying his motion for a judgment of acquittal.

### A. Motion for a New Trial

[¶ 12] The State argues that the court abused its discretion in granting Filler a new trial because the State only addressed the issues concerning the marriage ending and child custody within the context of its rebuttal and after Filler had already raised them in his closing argument. The State further argues that it merely asked the jury to consider whether the evidence supported Filler's claim that his wife had fabricated the alleged criminal conduct to acquire an advantage in a child custody dispute.

[¶ 13] Filler contends that the trial court did not abuse its discretion in ordering a new trial because it properly considered the prosecutor's violation of the court's decision to exclude evidence of a child custody dispute and impending divorce. Filler also contends that he was entitled to a new trial because the court erred when it excluded evidence that his wife had initiated legal proceedings regarding the custody of their children. The resulting prejudice, he asserts, was not harmless because the ruling directly undermined his defense that his wife had fabricated her allegations of abuse.

[¶ 14] We review a judgment granting a mistrial for an abuse of discretion. *See State v. Bennett,* 658 A.2d 1058, 1063 (Me.1995). Maine Rule of Criminal Procedure 33 allows trial courts to grant new trials "if required in the interest of justice." We review a court's evidentiary rulings for clear error or an abuse of discretion. *State v. Mills,* 2006 ME 134, ¶ 8, 910 A.2d 1053, 1056. "We review determinations based on relevancy for clear error,

but regularly review decisions on admissibility for abuse of discretion." *Id.*

[¶ 15] We first consider whether, as Filler contends, the court erred when it sustained the State's objection to his effort to question his wife as to whether she "took legal steps through the court systems in Hancock and Washington Count[ies] to gain custody of her children." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401.

[¶ 16] Relevant evidence is admissible, M.R. Evid. 402, unless it is excluded for some reason other than its relevancy. *See State v. Allen,* 2006 ME 20, ¶ 18, 892 A.2d 447, 453. In this instance, the court excluded the evidence based on its assessment that, pursuant to M.R. Evid. 403, it would mislead the jury to consider matters that were the subject of separate civil cases and did not bear directly on the crimes for which Filler was being tried. Rule 403 describes circumstances in which relevant evidence may be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶ 17] Courts are afforded "wide discretion" to make Rule 403 determinations. *State v. Millay,* 2001 ME 177, ¶ 11, 787 A.2d 129, 131–32. "We have held, however, that when evidence is proffered by a criminal defendant and the State contends that the evidence is inadmissible, the defendant's right to confront and cross-examine the witnesses against him significantly circumscribes the court's discretion to exclude the evidence." *State*

*v. Thurlow,* 1998 ME 139, ¶ 6, 712 A.2d 518, 520 (quotation marks omitted). Because evidence of a complaining witness's motivation bears directly on the issue of credibility, we have recognized that "[t]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* ¶ 7, 712 A.2d at 520 (quotation marks omitted).

[¶ 18] Thus, we previously determined that a defendant was entitled to a new trial when the court excluded testimony regarding the alleged victim's prior threats to fabricate claims that the defendant had raped her. *See id.* ¶ 1, 712 A.2d at 519. The evidence was erroneously excluded because it "demonstrated a distinct manifestation of [the alleged victim's] vindictiveness" towards the defendant. *Id.* ¶ 8, 712 A.2d at 521. We concluded that when the victim is the State's primary witness against the defendant, "evidence tending to impeach [the victim's] credibility ha[s] greatly enhanced probative value." *Id.* ¶ 9, 712 A.2d at 521 (quotation marks omitted). Similarly, we have held that a court erred in excluding evidence that the complaining witness was involved in marketing and selling T-shirts that publicized the case. *See State v. Graves,* 638 A.2d 734, 735 (Me.1994). We concluded that "[t]he pecuniary interest and motivation of a complaining witness is a proper subject for jury consideration." *Id.* at 739.

[¶ 19] For two reasons we conclude that the court abused its discretion when it sustained the State's objection to Filler's cross-examination of his wife as to what, if any, legal actions she took to obtain legal custody of the children. First, evidence that Filler's wife had taken legal steps to gain custody of the children was relevant because it made a fact of consequence—whether she had a motive

to fabricate her allegations of abuse—more probable than not. Although the complaints for protection from abuse and divorce were filed subsequent to the incidents charged in the indictment, this evidence was not irrelevant as the court's second order appears to suggest. *See State v. Whitman*, 429 A.2d 203, 205 (Me. 1981) (holding that the alleged victim's filing of a civil suit after criminal charges had been filed against the defendant was relevant to her credibility "because it g[ave] her a financial interest in the outcome of the criminal prosecution."). On the contrary, evidence of the legal actions taken by Filler's wife would have supported Filler's theory that she had an ulterior motive in making the claims in the first instance.

[¶ 20] Second, the relevancy of the evidence was not substantially outweighed by the danger of "confusion of the issues" or any of the other grounds for the exclusion of evidence stated in Rule 403. Similar to *Thurlow* and *Graves*, Filler's wife's credibility was central to the outcome of the case and Filler's defense necessarily rested on his impeachment of her. Thus, the probative value of her motivation for potentially fabricating the allegations of abuse was substantial. Contrary to the court's view, establishing that she had sought awards of custody in the two protection from abuse complaints and the divorce complaints she had filed would not produce a trial within a trial. The fact that the complaints were filed did not require a determination of the merits of the complaints or details regarding the legal process that resulted from each complaint. We can presume that she would have con-

firmed that she filed the complaints or, if she denied the same, Filler would have impeached her by introducing copies of the complaints. In either event, this relevant evidence would have required only a few minutes of trial time to be fully explored and would not have led to a separate trial on matters that had already been litigated. Thus, the probative value of the evidence was not substantially outweighed by any of the dangers articulated in M.R. Evid. 403.

[¶ 21] The prejudice to Filler resulting from the court's exclusion of the evidence was amplified by the State's rebuttal argument. Filler argued in his closing that his wife's allegations preceded what was an inevitable child custody dispute. Even though Filler was prevented from questioning her regarding the actual child custody cases that occurred, the trial evidence reasonably permitted the inference that a child custody case might ensue soon after she reported her allegations to the police.[3] The prosecutor's rebuttal argument, however, went beyond a general discussion of a child custody dispute and suggested that Filler's theory of the case should be disbelieved because there was no evidence that the marriage was ending or that his wife took any steps related to a child custody dispute: "I would ask you where the evidence is to back up his statement that he stated in both his opening and his closing that this is a marriage that was ending ... *this was a first step* in a child custody fight? Where is one piece of evidence about that?" The prosecutor's reference to "a first step" refers directly to Filler's wife's report to the police that Filler had victimized her. The absence of

---

**3.** A jury could infer from Filler's wife's testimony that she and Filler were in the beginning stages of a child custody dispute at the time she reported Filler's assaults to the police. She testified that she was very concerned for the safety of her children and her

son was with Filler at that point in time. When asked, "isn't it true you told [the sheriff's deputy] that you would kill him and anybody that got in the way of you getting [the son] back from Vladek[,]" she responded, "I was terrified for my children."

even "one piece of evidence about that" refers to a second step—an actual child custody fight or divorce proceeding. Thus, the State's rebuttal argument asked the jury to reject Filler's defense that his wife had a motive to fabricate her allegations because of the absence of any evidence that she had taken any legal steps to acquire custody of the children.

[¶ 22] Although the prejudice resulting from the State's rebuttal argument might have been remedied by a curative instruction, such an instruction was not given because the court overruled Filler's objection to the rebuttal argument. *See Allen*, 2006 ME 20, ¶ 24, 892 A.2d at 455 (concluding that the court's curative instructions following testimony by witnesses that exceeded limitations imposed by the court diminished the prejudice to the defendant); *State v. Griatzky*, 587 A.2d 234, 236 (Me. 1991) (holding that a new trial was unnecessary despite a prosecutor's inappropriate comments because the trial court "chastised the prosecutor and instructed the jury to disregard his remarks"); *see also* Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument*, 51 Me. L.Rev. 241, 265–67 (1999). In the absence of such an instruction, we conclude, as did the trial court, that the State's rebuttal argument created a high likelihood that Filler was unfairly prejudiced. *See Whitman*, 429 A.2d at 206 (holding that "the exclusion of evidence about the civil suit" filed by the complaining witness against the defendant for monetary damages, "together with the prosecutor's argument exploiting that exclusion, resulted in prejudicial error and entitles the defendant to a new trial."). The likelihood that the jury might have been persuaded to accept the central premise of Filler's defense—that his wife

had a strong motive to fabricate her claims—was greatly diminished by the State's emphasis on the absence of evidence that the marriage was ending and the parties were engaged in a child custody dispute. The court did not err in concluding that the interest of justice requires a new trial.

## B. The Denial of Filler's Motion for a Judgment of Acquittal

[¶ 23] In his cross-appeal, Filler asserts that the court erred in denying his motion for a judgment of acquittal because there was insufficient evidence to support his convictions.

[¶ 24] We use a sufficiency of the evidence analysis to review the denial of a motion for a judgment of acquittal. *See State v. Rice*, 2007 ME 122, ¶ 22, 930 A.2d 1064, 1068. When a defendant alleges that the evidence is insufficient to support his convictions, "we view the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense[s] charged." *State v. Bickart*, 2009 ME 7, ¶ 46, 963 A.2d 183, 195 (quotation marks omitted). "The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." *State v. Basu*, 2005 ME 74, ¶ 20, 875 A.2d 686, 692 (quotation marks omitted). Moreover, "[a] victim's testimony, by itself, is sufficient to support a guilty verdict for a sex crime or a violent crime if the testimony addresses each element of the crime and is not inherently incredible." *State v. Moores*, 2006 ME 139, ¶ 9, 910 A.2d 373, 376.

[¶ 25] Gross sexual assault has two elements: (1) a sexual act, and (2) compulsion.[4] *See* 17–A M.R.S.

---

**4.** Title 17–A M.R.S. § 253(1)(A) (2009) states:

**1.** A person is guilty of gross sexual assault if that person engages in a sexual act with another person and:

§ 253(1)(A). Here, Count I, gross sexual assault, was established by his wife's testimony that Filler pushed her against the dryer, held her head down, and had forcible anal sex with her.

 [¶ 26] Assault has two elements: (1) intentional, knowing, or reckless action, and (2) causing bodily injury or offensive physical contact to another person.[5] *See id.* § 207(1)(A). The elements for Count II, assault, were satisfied by Filler's wife's testimony that Filler called her a number of degrading names and threw two cups of water in her face. Finally, Count VII, assault, was established by Filler's wife's testimony that Filler grabbed her by the arms, pushed her hard into a chair, and that he forcefully pulled her off the toilet. Moreover, she testified that soon after the incident, she discovered a bruise on her arm from where Filler had grabbed her. Her testimony to the bruise was corroborated by the admission in evidence of a photograph that showed the bruise, and the testimony of a friend who observed the bruise.

[¶ 27] The jury was free to credit Filler's wife's testimony and the supporting evidence introduced by the State. The trial court did not err in denying Filler's motion for judgment of acquittal because there was "sufficient evidence in the rec-

ord to support a finding, beyond a reasonable doubt, that [Filler] committed each element of the crimes" alleged. *See State v. Drewry,* 2008 ME 76, ¶ 33, 946 A.2d 981, 991.

The entry is:

Judgment affirmed. Case is remanded to the Superior Court for proceedings consistent with this opinion as to Count I (gross sexual assault), Count II (assault), and Count VII (assault).

---

A. The other person submits as a result of compulsion, as defined in section 251, subsection 1, paragraph E. Violation of this paragraph is a Class A crime.
The term "sexual act," as it applies in this case, is defined as
(1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other. *Id.* § 251(1)(C)(1) (2009). Compulsion is defined as
the use of physical force, a threat to use physical force or a combination thereof that

makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being.
"Compulsion" ... places no duty upon the victim to resist the actor.
*Id.* § 251(1)(E)(2009).

5. Title 17–A M.R.S. § 207(1)(A) (2009) states:
1. A person is guilty of assault if:
A. The person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person. Violation of this paragraph is a Class D crime.