MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 68
Docket:        Aro-14-299
Argued:        April 7, 2015
Decided:       May 19, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## STEPHEN J. TUCKER SR.

MEAD, J.

[¶1]  Stephen J. Tucker Sr. appeals from a judgment of conviction entered in the trial court (*Hunter, J.*) on a jury verdict finding him guilty of theft by deception (Class B), 17-A M.R.S. § 354 (2014).  He claims that the court erred in (1) admitting testimony that he claims was inaccurate and prejudicial, (2) allowing the state to reopen its case after it had rested, and (3) failing to instruct the jury on an additional element of theft by deception.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In June 2006, Tucker injured his left hand while working as a mechanic.  In that same month the Maine Employers Mutual Insurance Company (MEMIC)[1] began paying Tucker weekly workers' compensation benefits.

---

[1]  MEMIC is an insurance company that provides coverage to employers for workers' compensation

2

[¶3]    Several years later, after receiving a tip, MEMIC hired a private investigator to conduct surveillance of Tucker beginning in July 2009.  The private investigator conducted video surveillance on various days in July 2009, October 2009, March 2010, and April 2010.[2]    The surveillance videos showed Tucker working full-time at a small-engine repair shop called Littleton Repair and performing various tasks there, including changing tires, performing oil changes, swinging a hammer, repairing lawn mowers, and accepting cash payment.  Tucker was documented opening and closing the shop, often working eight-hour days or longer, and wearing a uniform displaying the name Littleton Repair with his first name embroidered on it.

[¶4]    Tucker admitted at a workers' compensation hearing that both telephone numbers displayed on the Littleton Repair business sign were in his name, but he claimed that his son owned and operated the business and that he was never paid for his work.[3]    Tucker's wife maintained a bank account in her name into which were deposited numerous checks made out to Tucker personally and to Littleton Repair.  Tucker's checks from MEMIC were also deposited into the account, and disbursements to pay for the business expenses of the repair shop were made from the account.

---

[2]  The private investigator conducted video surveillance over the course of about five days.

[3]  In all the days and hours of surveillance, the investigator never observed the son at the shop.

[¶5]  From Tucker's date of injury in 2006 until April 2012, Tucker repeatedly told his doctor that his left hand hurt too much to work.  Tucker also completed employment status reports for MEMIC stating that he had not worked or performed any services for pay or other benefit.[4]  Additionally, each check from MEMIC that Tucker endorsed displayed an acknowledgment above the endorsement stating that by signing the check he was agreeing that he was not working or receiving pay for work.

[¶6]  The surveillance footage was given to Tucker's former employer, who filed a petition for review with the Workers' Compensation Board (Board) seeking a determination regarding Tucker's benefits.  The Board issued a decree terminating Tucker's benefits in March 2012, after which MEMIC stopped issuing payments to Tucker.  Between February 2009 and March 2012, Tucker received over $50,000 from MEMIC in workers' compensation payments.

[¶7]  On July 13, 2012, the Aroostook County grand jury indicted Tucker on one count of theft by deception, 17-A M.R.S. § 354.[5]  Tucker pleaded not guilty in

---

[4]  The status reports are dated March 7, 2009; August 3, 2009; February 8, 2010; and May 14, 2010.

[5]  Title 17-A M.R.S. § 354 (2014) provides:

(1)  A person is guilty of theft if:

(A) The person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property.  Violation of this paragraph is a Class E crime; or

4

March 2013 and the parties prepared the case for a jury trial. In October 2013, the State filed a motion for deposition pursuant to M.R. Crim. P. 15 in order to obtain the testimony of Jacques Violette, who had been hired by the Board to provide vocational and rehabilitation services to Tucker, and who would be unavailable for trial. The court granted the motion for cause shown and without objection, and Violette's video deposition was taken in December 2013. Violette was examined by the State and cross-examined by the defense during the deposition. In January 2014, the State filed a motion in limine requesting to play the video deposition at trial. Tucker did not object to, nor did the court ever officially rule on, the motion.

[¶8] A jury trial was held over three days in April 2009. The first witness to testify for the State was an insurance adjuster employed by MEMIC, Colleen Hart, who was assigned to Tucker's workers' compensation case in 2009. The State questioned Hart about whether MEMIC would have paid workers' compensation benefits to Tucker if he had reported that he was able to use his left hand for mechanic's work. The defense objected on the basis that the question called for a legal conclusion, asserting that Hart could not make such a determination under the workers' compensation system. The court ruled, "She knows enough about

---

(B) The person violates paragraph A and:

    (1) The value of the property is more than $10,000. Violation of this subparagraph is a Class B crime.

worker[s'] compensation . . . to be able to indicate whether or not . . . worker[s'] compensation benefits are paid to somebody who is working. That's pretty basic." Hart then testified that MEMIC would not have paid workers' compensation benefits to Tucker had he disclosed that he was able to use his left hand to do mechanic's work.

[¶9] The State rested its case on the first day of trial following the testimony of four witnesses, and the defense called one witness that same day. After the jury was dismissed, counsel met in chambers and the State indicated that it had forgotten to play the video deposition of Violette. The State did not make a formal motion to reopen its case, and Tucker did not object to the State's request to play the video. The court determined that the video testimony was anticipated by both sides, it was relevant, its admission would not unfairly prejudice Tucker's interests, and its omission was simply an oversight. The video deposition was then played for the jury on the second day of trial.[6] On the morning of the third day of trial, the court provided final instructions to the jury, which were not objected to by either party. Later that day, the jury returned a verdict finding Tucker guilty of theft by deception in an amount exceeding $10,000.

---

[6] The video deposition played for the jury was a redacted version and excluded portions of the video that the defense had previously objected to.

## II.  DISCUSSION

[¶10]  Tucker argues that the court erred by (1) failing to instruct the jury on an additional element of the charge of theft by deception; (2) allowing Hart's testimony, which he claims was inaccurate and prejudiced the jury; and (3) allowing the State to reopen its case to play the video deposition of Violette. We examine his claims in turn.

### A.  Jury Instructions

[¶11]  "We review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Hofland,* 2012 ME 129, ¶ 18, 58 A.3d 1023 (quotation marks omitted).  A judgment of conviction will be vacated for a claim of omission in a particular instruction only "if the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."  *Id.* (quotation marks omitted).  Because Tucker did not object to the jury instructions at trial, they are reviewed for obvious error.  *State v. Small,* 2000 ME 182, ¶ 5, 763 A.2d 104.

[¶12]  Tucker argues that because MEMIC is governed by the workers' compensation statutes, in order for his actions to constitute theft the State had to prove at trial that MEMIC was no longer obligated under the Workers' Compensation Act (WCA) to pay Tucker during the period in question.  The record indicates that the court instructed the jury on the elements of theft by

deception contained in 17-A M.R.S. § 354 as follows: (1) "that approximately between July 28, 2009, and February 29, 2012, . . . [Tucker]"; (2) "obtained or exercised control over the property of [MEMIC]"; (3) "that he did so by using deception"; and (4) "that he did so with the intent to deprive [MEMIC] of that property." When reviewed for obvious error, the record shows that the court accurately instructed the jury on the elements of the crime as defined in 17-A M.R.S. § 354: "A person is guilty of theft if . . . [t]he person obtains or exercises control over property of another as a result of deception and with intent to deprive the other person of the property."

[¶13] The gravamen of theft by deception is the obtaining of the property of another by deceit. The State presented evidence showing that Tucker repeatedly made deceptive representations both about his ability to work and that he was not working or receiving income from labor. Tucker's entitlement to workers' compensation payments hinged, at least in part, on his truthful representations regarding work capacity and income received from work. Regardless of whether the employer could stop payments on its own initiative or whether it needed to obtain Board authorization, Tucker procured the payments through deception.

[¶14] Tucker's reliance on *Keyes Fibre Co. v. Lamarre,* 617 A.2d 213 (Me. 1992) is misplaced. *Keyes Fibre Co.* was a civil case involving a conversion claim. The key element to civil conversion is invasion of possession or the right to

8

possession of the property at the time of conversion.[7]  *Withers v. Hackett,* 1998 ME 164, ¶ 7, 714 A.2d 798.  Civil conversion looks to who has the right to possess the funds.  By contrast, the criminal charge of theft by deception examines whether someone committed deception and thereby obtained the property of another.  The issue in this case is not whether MEMIC had a right to possess the property instead of Tucker, but rather whether Tucker procured the property by deception.  Therefore, the issue of whether MEMIC was obligated to pay the funds under the WCA is irrelevant, and there is no error in the jury instructions.

B.     Hart's Testimony

[¶15]  We review the court's ruling on witness competency for clear error, and its ruling on a witness's qualifications for an abuse of discretion.  *State v. Caron,* 2011 ME 9, ¶¶ 11, 13, 10 A.3d 739.  Additionally, we review challenges to the admission of opinion testimony for an abuse of discretion.  *State v. Patton,* 2012 ME 101, ¶ 20, 50 A.3d 544 (regarding lay witnesses); *State v. Diana,* 2014 ME 45, ¶ 35, 89 A.3d 132 (regarding expert witnesses).

---

[7] The elements of conversion are:

> (1) that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder.

*Withers v. Hackett,* 1998 ME 164, ¶ 7, 714 A.2d 798.

[¶16] Tucker contends that Hart's testimony was inaccurate because under the WCA, an employee's entitlement to benefits is a matter for the Board to decide, not MEMIC or its employees. Tucker contends that he was unfairly prejudiced because Hart's testimony was the only evidence establishing the necessary causal link between his alleged deception and MEMIC's payment of benefits.

[¶17] Hart testified that she had been an adjuster at MEMIC for twelve years and during that time had investigated claims to determine whether or not they were compensable. She opined as to what MEMIC would have done had Tucker informed her that he was actually able to use his left hand for mechanic's work. The court did not abuse its discretion in permitting Hart to testify.

C.   Violette's Video Deposition

[¶18] Pursuant to M.R. Crim. P. 26(c), "A party who has rested a case cannot thereafter produce further evidence except in rebuttal unless by leave of court." We review a "court's ruling on a motion to reopen for an abuse of discretion." *State v. Holland,* 2012 ME 2, ¶ 31, 34 A.3d 1130. However, because Tucker did not object at trial to the admission of the video deposition, his challenge is not preserved and therefore the court's decision is reviewed for obvious error affecting his substantial rights. *State v. Lockhart,* 2003 ME 108, ¶ 35, 830 A.2d 433.

10

[¶19]   Tucker argues that (1) Violette's testimony was irrelevant and only confused the jury; (2) Violette was a lay witness and not an expert witness; and (3) the State's failure to present the testimony before it rested was not merely a simple oversight.  Tucker additionally argues that the court's ruling admitting the testimony was not harmless because the State relied heavily on the testimony to attack Tucker's credibility, which was one of the central issues in the case.

[¶20]   A court weighs several factors in ruling on a motion to reopen, including "(1) the potential prejudice to the opposing party, (2) the probative value of the proffered evidence, and (3) the moving party's excuse for the untimeliness of its offer." *Holland,* 2012 ME 2, ¶ 31, 34 A.3d 1130 (quotation marks omitted). The court addressed each of these three factors on the record and determined that the State would be allowed to reopen its case because the video testimony was (1) not prejudicial to Tucker because both sides anticipated that the video would be shown to the jury and the State referred to it in its opening statement, (2) probative because it was relevant to Tucker's work capacity, and (3) initially omitted through a simple and excusable oversight.  Additionally, the defense did not object to the State's original motion for deposition or motion in limine, nor did it object at trial to the State reopening its case.  The record supports the court's determination; there is no obvious error.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Heather Gonzales, Esq., Strike, Goodwin & O'Brien, Portland, for appellant Stephen J. Tucker Sr.

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Heather Gonzales, Esq., for appellant Stephen J. Tucker Sr.

Leanne Robbin, Asst. Atty. Gen., for appellee State of Maine

Aroostook County (Houlton) Superior Court docket number CR-2012-86
FOR CLERK REFERENCE ONLY