MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 122
Docket:        Han-16-378
Argued:        April 12, 2017
Decided:       June 20, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

BENJAMIN H. HODGDON II

JABAR, J.

[¶1] Benjamin H. Hodgdon II appeals from a judgment of conviction entered by the trial court (Hancock County, *R. Murray, J.*) on a jury verdict finding him guilty of one count each of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4) (Supp. 2000);[1] unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2) (Supp. 2000);[2] and sexual abuse of a minor (Class C), 17-A M.R.S.A. § 254(1)(A), (3)(A) (Supp. 2000).[3] He contends

---

[1]  Title 17-A M.R.S.A. § 253(1)(B), (4) has since been amended.  P.L. 2003, ch. 711, § B-2 (effective July 30, 2004) (codified at 17-A M.R.S.A. § 253 (2016)); P.L. 2001, ch. 383, §§ 14, 18 (effective Jan. 31, 2003).

[2]  Title 17-A M.R.S.A. § 255(1)(C), (2) was repealed and replaced by P.L. 2001, ch. 383, §§ 22, 23 (effective Jan. 31, 2003) and has since been amended, most recently by P.L. 2015, ch. 509, § 2 (effective May 22, 2012) (codified at 17-A M.R.S. § 255-A (2016)).

[3]  Title 17-A M.R.S.A. § 254(1)(A), (3)(A) has since been amended.  P.L. 2001, ch. 383, § 21 (effective Jan. 31, 2003) (codified at 17-A M.R.S. § 254(1)(A), (A-2) (2016)).

on appeal, inter alia, that the trial court's jury instructions as to the counts for gross sexual assault and unlawful sexual contact were in error because the instructions did not require the jury to find beyond a reasonable doubt that the victim was not yet fourteen years old when those crimes occurred. We disagree and affirm the judgment.

## I. BACKGROUND

[¶2] The jury rationally could have found the following facts beyond a reasonable doubt. *See State v. Troy*, 2014 ME 9, ¶ 3, 86 A.3d 591.

[¶3] Hodgdon worked as a sixth, seventh, and eighth grade teacher from 1991 until 2003. The victim was born on March 16, 1986, and attended the same school where Hodgdon taught; Hodgdon was her teacher, tutor, and cross-country coach. During the summers of 1998, 1999, and 2000, she worked for Hodgdon's lawn care business mowing lawns.

[¶4] When she was in seventh or eighth grade, Hodgdon began a sexual relationship with the victim. Hodgdon initiated the relationship by kissing the victim and touching her genitals both over and underneath her clothing. On a later occasion, Hodgdon and the victim had sexual intercourse after she had spent the evening babysitting his children. Over the course of their relationship they had sexual intercourse at Hodgdon's home, in his modular

classroom, and in his truck both at the school parking lot and at lawn care job sites. Hodgdon also on one occasion performed oral sex on her at his relative's house in Northeast Harbor. The victim estimated that, in total, they had sex between thirty and forty times before she completed junior high.

[¶5] Hodgdon and the victim remained in contact after she finished junior high school in 2000. She worked for him tending lawns during the summers of 2004 and 2006, and in the summer of 2004, when the victim was eighteen, Hodgdon performed oral sex on her in his home. They remained in contact both in person and by phone until July 2013.

[¶6] The victim reported the crimes to the Hancock County Sheriff's Office in 2013. Hodgdon was charged by indictment on April 10, 2014, with four counts of gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4); two counts of unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2); and two counts of sexual abuse of a minor (Class C), 17-A M.R.S.A. § 254(1)(A), (3)(A). He pleaded not guilty to all charges.

[¶7] Hodgdon filed a motion to dismiss on August 11, 2014, contending that the State permitted the spoliation of the victim's cellphone—from which an investigating detective had downloaded a recording purportedly made by the victim of a conversation between Hodgdon and herself—arguing that

4

digital data on the lost or destroyed phone constituted "crucial, exculpatory, irreplaceable evidence." The trial court (*Mallonee, J.*) held a hearing on the motion on December 17, 2014, and denied it on March 26, 2015.

[¶8] A jury trial was held on March 14, 15, and 16, 2016,[4] and the jury returned a guilty verdict as to Count 5, gross sexual assault (Class A), 17-A M.R.S.A. § 253(1)(B), (4); Count 6, unlawful sexual contact (Class C), 17-A M.R.S.A. § 255(1)(C), (2); and Count 7, sexual abuse of a minor (Class C), 17-A M.R.S.A. § 254(1)(A), (3)(A). The jury acquitted Hodgdon of all other charges, and the court (*R. Murray, J.*) denied his motion for judgment of acquittal as to Counts 5, 6, and 7.

[¶9] On the charge of gross sexual assault, Hodgdon was sentenced to eleven years' imprisonment with all but three years and six months suspended and six years of probation. On each of the charges of unlawful sexual contact and sexual abuse of a minor, he was sentenced to three years' imprisonment, both to run concurrently with his sentence for gross sexual assault. He timely appeals. *See* M.R. App. P. 2(b)(2)(A).

---

4 The court granted Hodgdon's motion in limine to exclude from evidence the cell phone recording, a transcript of the recording, and any testimonial references to either.

## II. DISCUSSION

[¶10]  Hodgdon raises three issues on appeal that we will address.[5]  He contends that (1) the jury instructions as to Counts 5 and 6 relieved the State of its burden of proving beyond a reasonable doubt that the victim was under fourteen years old at the time the offenses were committed, (2) the broad range of time encompassed by the indictment exposes him to double jeopardy, and (3) there was not sufficient evidence for the jury to find beyond a reasonable doubt that Hodgdon had sex with the victim before she attained the age of fourteen

A.    Jury Instructions

[¶11]  Hodgdon's argument regarding the victim's age concerns the "on or about" instruction the court provided following its recital of the elements of the crimes.  To return a guilty verdict on Count 5, gross sexual assault, and Count 6, unlawful sexual contact, the jury was required to find that at the time of the alleged offenses the victim was less than fourteen years old.  *See* 17-A M.R.S.A. § 253(1)(B); 17-A M.R.S.A. § 255(1)(C).  The court instructed the jury as to each element of these crimes, including the victim's age, then

6

instructed the jury that because the indictment "charges that these various crimes were committed 'on or about' various" dates, the specific date of each crime "need not be proven." Instead, the court instructed, "It is enough if the State proves beyond a reasonable doubt that (a) the crime charged was committed by the Defendant; and (b) it happened sometime within the dates suggested by the evidence in the case." According to Hodgdon, this "on or about" instruction allowed the jury to return a guilty verdict without finding that the victim was under fourteen at the time of the alleged incidents.

[¶12] "We review jury instructions as a whole . . . to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Tucker*, 2015 ME 68, ¶ 11, 117 A.3d 595 (quotation marks omitted). Because Hodgdon did not object to the court's jury instructions at trial, we review his unpreserved challenge to those instructions for obvious error. *See State v. Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132. To prevail on appeal, Hodgdon "must demonstrate that (1) there is an error, (2) that is plain, (3) that affects substantial rights, and, if so, (4) that it is error that seriously affects the integrity, fairness, or public reputation of judicial proceedings." *Id.*

[¶13]  We recently held in *State v. Westgate* that the jury instructions provided in a similar sex crime case "plainly and erroneously suggested that the jury could bypass the issue of whether the victim was younger than [the statutory cut-off age] when the offenses were committed."  2016 ME 145, ¶ 22, 148 A.3d 716.  In *Westgate*, the indictment charged the defendant with sex offenses against a child under twelve occurring "[o]n or about Summer, 2009," when the victim turned twelve on July 20 of that year.  *Id.* ¶ 3.  The trial court in *Westgate* provided an "on or about" instruction nearly identical to the instruction at issue here.  *Id.* ¶ 10.  The jury requested reinstruction as to timing, and the court repeated the "on or about" instruction.  *Id.* ¶ 11.  We vacated the defendant's conviction because the court "read the indictment to the jury, but did not specify what the elements of the criminal charges were, including the element that the victim must have been under the age of twelve when the conduct occurred."  *Id.* ¶ 19.  The only "suggest[ion] that the jury had to find that the victim was under twelve" was the court's reading of the indictment; the "incomplete" instructions therefore "affected [the defendant's] substantial rights and the fairness of his trial."  *Id.* ¶¶ 22-23.

[¶14]  Unlike the *Westgate* instructions in which only the indictment was read to instruct the jury as to the required element of the victim's age, *id.*

¶ 19, the trial court here provided instructions to the jury that consisted of each element of the offenses, including the victim's age. Even before the State's case-in-chief, the court provided a legal road map for the jury, telling them that "under the laws of the state of Maine a person is guilty of the crime of gross sexual assault" if "at the time of the sexual act the [victim] has not attained the age of 14 years." The court also told the jury at that time that "a person is guilty of unlawful sexual contact if . . . the [victim] is less than 14 years of age." After closing arguments, the court instructed the jury as to Count 5 that the State must prove beyond a reasonable doubt that "on or about January 15, 2000, . . . [the victim] had not attained that age of 14 years," and as to Count 6 that "on or about February 15, 2000, . . . [the victim] was less than 14 years of age."

[¶15] Nevertheless, Hodgdon contends that the "on or about" instructions relieved the State of proving beyond a reasonable doubt that the victim was under fourteen when the incidents alleged in Counts 5 and 6 occurred. We disagree. The court's "on or about instruction" informs the jury that the State must prove "beyond a reasonable doubt that . . . the crime charged was committed by the Defendant." The court clearly instructed the

jury that the burden of proof remained with the State to prove each element of the crimes charged.

[¶16]  Although the "on or about" language—instructing the jury to determine whether the crime was committed and not whether it was committed on a specific date—standing by itself suffers from the same infirmity we discussed in *Westgate*, considering the instructions as a whole, as we must do, *see Tucker*, 2015 ME 68, ¶ 11, 117 A.3d 595, the "on or about" instructions do not rise to the level of obvious error.  The court on several occasions informed the jury of the requirement that to return a guilty verdict as to Counts 5 and 6 they must find that the victim was under the age of fourteen years at the time the offenses occurred.  The jury was correctly informed of the relevant law and the State's burden of proof.

B.     Double Jeopardy

[¶17]  Hodgdon next argues that the broad range of time encompassed by the indictment "is so elastic" when considered with the evidence presented at trial that it will expose him to double jeopardy because it is unclear on which evidence Hodgdon was convicted.

[¶18]  The double jeopardy clauses of the United States and Maine Constitutions prevent a defendant from standing trial a second time for the

same offense following conviction.  *See State v. Frisbee*, 2016 ME 83, ¶ 29 n.12, 140 A.3d 1230.  We review double jeopardy claims de novo.  *State v. Hayward*, 2017 ME 33, ¶ 15, 156 A.3d 734.

[¶19]  In *State v. Lyon,* we upheld a judgment of conviction entered upon a jury verdict finding a defendant guilty of one count of unlawful sexual contact pursuant to 17-A M.R.S. § 255-A(1)(E)(1) (2015) over claims of double jeopardy violations.  2016 ME 22, ¶¶ 2-12, 131 A.3d 918.  The indictment alleged dates "on or about between March 3, 2011 and March 3, 2012."  *Id.* ¶ 2 (alteration omitted) (quotation marks omitted).  The victim's twelfth birthday was March 30, 2012.  *Id.* ¶ 5.  Because the evidence presented supported the jury's finding that the defendant committed the charged crimes before March 30, 2012, we affirmed the verdict, concluding there was no obvious error in the variance between the timeframe indicated by the indictment and the timeframe indicated by the evidence.  *Id.* ¶¶ 6-8.  Even though the evidence "extended beyond the 'on or about' end-date alleged," the defendant was protected against double jeopardy because

> seen in the context of the actual evidence presented in support of that charge, it becomes clear that the temporal parameter for the conviction extends beyond the specific offense date alleged in the indictment . . . . This reading of the indictment . . . is therefore sufficient to invoke [the defendant's] double jeopardy protection and bar a future prosecution . . . .

*Id.* ¶ 11.

[¶20]  Just as in *Lyon*, the indictment in this case charged offenses "on or about" certain dates.  Also, similarly to *Lyon*, and as we discuss below when considering Hodgdon's argument as to the sufficiency of the evidence, the evidence presented suggests that the crimes of which Hodgdon was convicted could have occurred over a period of time.  Unlike *Lyon*, however, each charge contained in the indictment specified an offense that occurred on or about a single date rather than a specified time span.  Collectively, these charges spanned from August 15, 1999, to July 15, 2000, a period of eleven months.  Because Counts 5 and 6 required the jury to find that the offenses charged occurred before the victim's fourteenth birthday—March 16, 2000—and Count 7 required the jury to find that an offense occurred when the victim was fourteen or fifteen years old, the dates in the indictment together with her birthday provide clear guideposts upon which the jury could assess the evidence presented, despite the victim's testimony that the sexual acts occurred over a long period of time.  *See also State v. Cloutier*, 1997 ME 96, ¶¶ 8, 11-12, 695 A.2d 550 (concluding that a defendant did not face further jeopardy despite victim testimony establishing that unlawful sexual contact and gross sexual assault had occurred a year or more after the date listed in

an indictment). Therefore, applying our reasoning from *Lyon*, we conclude that the temporal parameters for the conviction as established by the indictment are sufficient to avoid double jeopardy concerns.

C.  Sufficiency of the Evidence

[¶21]  Hodgdon next argues that the evidence presented at trial did not support a guilty verdict as to Counts 5, 6, or 7 because the jurors rationally could not have found that Hodgdon had sexual encounters with the victim before the encounter to which he admitted, which occurred when she was eighteen.  "When a defendant challenges the sufficiency of the evidence supporting a conviction, we determine, viewing the evidence in the light most favorable to the State, whether a trier of fact rationally could find beyond a reasonable doubt every element of the offense charged."  *State v. Dorweiler*, 2016 ME 73, ¶ 6, 143 A.3d 114 (quotation marks omitted).  A jury "is permitted to draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses."  *State v. McBreairty*, 2016 ME 61, ¶ 14, 137 A.3d 1012 (quotation marks omitted).

[¶22]  The State's only evidence that Hodgdon committed the crimes as charged was the victim's testimony.  The victim testified that the first sexual

encounter occurred when she was twelve years old. She provided very specific details: Hodgdon asked her to call her parents to tell them she would be staying at a friend's house, she initially was in Hodgdon's bed but then moved into another room because her father unexpectedly arrived in the middle of the night, and she and Hodgdon had sexual intercourse after her father left.

[¶23]   Additional details of other testimony, including Hodgdon's testimony about when he had contact with the victim, place this sexual encounter in January or February 2000. Hodgdon recalled that there was an evening that the victim babysat for his children and then spent the night at his home. He testified that he had called the victim's mother to confirm that it would be acceptable for the victim to stay the night. Hodgdon also recalled that the victim's father had shown up in the middle of the night, checked on the victim, then left. Both Hodgdon and the victim testified that this sleepover took place after Hodgdon's first ex-wife had moved out. Hodgdon also testified that the events occurred during a period of time when a friend had been living with him; and that the friend had moved in around Christmas of 1999 and moved out in April or May 2000. These details place the first sexual encounter between Christmas of 1999 and April or May 2000. Hodgdon also

14

testified that his ex-wife moved out in August 1999, but that he did not have regular visitation with his children until after the New Year, further corroborating the timeframe charged by the indictment.

[¶24]    Recalling other incidents, the victim testified that she and Hodgdon had sex on numerous occasions after the sleepover incident, including multiple times in his classroom before classes began, multiple times at lawn care job sites, and on one occasion in his vehicle at school after cross country practice.   She testified that these incidents all occurred after the babysitting incident.

[¶25]   Hodgdon denied having any sexual encounters with the victim while she was a minor.   He provided several witnesses—employees and former employees of the school—to testify that it would have been difficult to have sex in the classrooms at the school without being noticed due to the lack of privacy.   He also presented evidence that it would have been difficult to have sex at Hodgdon's home during the alleged timeframe because of Hodgdon's house guest in the winter of 2000.   Further, the victim admitted at trial to having a drug addiction, and Hodgdon testified that he had tried to help her but that she had attempted to extort money from him on several occasions by threatening to "falsely accuse [him] of having had a sexual

relationship with her when she was a kid." Hodgdon also pointed out in his closing argument that the victim did not testify as to any unique bodily features of his until after he himself had testified to having a particular skin flap.

[¶26] Despite the conflicting evidence presented by Hodgdon, "[d]eterminations of the weight and credibility to be afforded the evidence are within the fact-finder's exclusive province." *State v. Schmidt*, 2008 ME 151, ¶ 19, 957 A.2d 80. Viewed in the light most favorable to the State, there is competent evidence in the record to support the jury's guilty verdicts and thus the court's entry of a judgment of conviction.

The entry is:

> Judgment affirmed.

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Benjamin H. Hodgdon II

Toff Toffolon, Dep. Dist. Atty. (orally), Ellsworth, for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2014-4
FOR CLERK REFERENCE ONLY