MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2024 ME 4
Docket:        Fra-22-59
Argued:        October 4, 2022
Decided:       January 23, 2024

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

STATE OF MAINE

v.

DANA A. HEALEY

LAWRENCE, J.

[¶1]  Dana A. Healey appeals from a judgment of conviction for domestic violence assault (Class D), 17-A M.R.S. § 207-A(1)(A) (2020),[1] entered by the trial court (Franklin County, *Davis, J.*) following a jury trial.  Healey contends that the court exceeded its discretion by failing to "permit voir dire examination to be conducted by the parties or their attorneys," 15 M.R.S. § 1258-A (2023), during jury selection and by denying Healey's requests to cross-examine the victim about her recanted domestic violence allegation against another person and the text messages that the victim sent to Healey after his arrest.  Although

---

[1]  We cite to the 2020 version of 17-A M.R.S. § 207-A(1)(A), the version in effect at the time of Healey's criminal conduct, because the statute was recently amended, *see* P.L. 2021, ch. 647, § B-17 (effective Jan. 1, 2023) (codified at 17-A M.R.S. § 207-A(1)(A) (2023)), though this amendment is not relevant to this appeal.

2

we are unable to reach a majority opinion as to the voir dire issue, we unanimously disagree with Healey's other contentions and affirm the judgment and sentence.

## I.  BACKGROUND

[¶2]  "Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts."  *State v. Murray,* 2021 ME 47, ¶ 2, 259 A.3d 1276.  On the evening of December 8, 2020, in the parking lot outside of a restaurant in Farmington, Healey and the victim, his then-girlfriend, got into a dispute.[2]  During this dispute, Healey shoved the victim, grabbed her by the hair, and shook her head, causing the victim to lose clumps of her hair.

[¶3]  On December 22, 2020, Healey was charged by complaint with intentionally, knowingly, or recklessly causing bodily injury or offensive physical contact to another person who is a family or household member, in violation of 17-A M.R.S. § 207-A(1)(A).

---

[2] The parties stipulated to the fact that Healey and the victim were sexual partners and, therefore, constituted "family or household members" within the meaning of section 207-A(1)(A) and 19-A M.R.S. § 4002(4) (2020).  Though not relevant to this appeal, section 4002(4) was recently repealed and replaced.  *See* P.L. 2021, ch. 647, §§ A-2 to A-3 (effective Jan. 1, 2023) (codified at 19-A M.R.S. § 4102(6) (2023)).

## A. Voir Dire

[¶4]  Before jury selection, Healey filed a proposed questionnaire that included twenty-one questions covering several themes including, but not limited to, gender bias and domestic violence.[3]  The court denied Healey's

---

[3] Although this case does not involve issues regarding operating a motor vehicle while under the influence, Healey's proposed questionnaire advised, inter alia, that "[t]he questions are necessary to assure that you can fulfill your duty to be an objective, fair and impartial juror" and that "[o]ne or more of the cases in which you may be asked to serve as a juror *involves allegations of operating a motor vehicle while under the influence of intoxicants such as alcohol*."  (Emphasis added.)

Healey's questionnaire then posed the following questions:

- "Do you believe that men are more likely than women to be the aggressor in [] situations involving domestic violence?"
- "Do you believe that false allegations of domestic violence are ever made to gain an advantage in a custody case or divorce?"
- "Do you believe that false allegations of domestic violence are ever made so that the accuser can avoid being arrested for domestic violence?"
- "Do you believe that false allegations of domestic violence are ever made out of spite or for revenge?"
- "Do you believe that a man should not use violence against a woman even if allowed by law (for example, in self-defense or to protect his property from being taken or damaged)?"
- "Do you believe that a man who is physically attacked by a woman should try to leave rather than defend himself with even a small amount of force?"
- "If a man and a woman accuse each other of domestic violence, are you more likely to believe the woman?"
- "Do you believe that almost all allegations of domestic violence are true?"
- "Do you believe that almost all men charged with domestic violence by the police are guilty?"
- "Do you believe that it is worse for a man to use force or violence against a woman than for a woman to use force or violence against a man (using the same amount of force)?"
- "Have you or any member of your immediate family been charged with a domestic violence crime?"
- "Have you or an immediate family member been the victim of domestic violence?"
- "Do you believe that the victim of domestic violence is usually a woman?"
- "Do you believe that men are naturally more violent and aggressive than women?"
- "Have you or an immediate family member been the defendant in a 'protection from abuse' (domestic restraining order) case?"
- "Have you or an immediate family member ever been the plaintiff in a 'protection from abuse' (domestic relations restraining order) case?"
- "Have you ever reported someone to the police for domestic violence?"

4

request to use his proposed questionnaire and used the court's standard domestic violence questionnaire instead.[4]  After the court denied Healey's request to use his own questionnaire, Healey requested that the court ask his proposed questions, "if not in written form" then "verbally of the jurors." Healey also cited to 15 M.R.S. § 1258-A for the proposition that parties must be permitted to conduct voir dire under the court's direction.  The court denied Healey's request without any explanation.

[¶5]  The court proceeded by calling each of the twenty-five prospective jurors who had responded "yes" to the first question on the administered questionnaire ("Have you, a close family member, or a close friend ever been

---

- "Have you ever contributed money to or been a member of a group that advocates against domestic violence (*e.g.,* 'Safe Voices')?"
- "Do you believe that too many people get away with domestic violence?"
- "Have you ever had contact with victims or alleged victims of domestic violence as part of your employment?"
- "Is there any reason why you could not consider evidence fairly, impartially, and objectively in a case involving allegations of domestic violence?"

[4] The administered questionnaire was comprised of the following five questions:

- "Have you, a close family member, or a close friend ever been the victim of domestic violence or threatened with domestic violence?"
- "If yes, would it be difficult for you to fairly and impartially decide a case where someone is accused of domestic violence or threatening domestic violence?"
- "Have you, a close family member, or a close friend ever been accused of domestic violence or making threats of domestic violence?"
- "If yes, would it be difficult for you to fairly and impartially decide a case where someone is accused of domestic violence or threatening domestic violence?"
- "Is there any reason why it would be difficult for you to be fair and impartial in a case where someone is accused of domestic violence or threatening domestic violence?"

the victim of domestic violence or threatened with domestic violence?") into chambers, with counsel present, for individual voir dire. With some slight variation, the court asked each prospective juror to identify the person who had experienced domestic violence that led them to answer the question in the affirmative, how long ago the domestic violence had occurred, whether the alleged perpetrator had been prosecuted, and whether the juror believed that the juror could be fair and impartial.

[¶6] During individual voir dire, Healey asked the court whether he could ask a prospective juror a couple of follow-up questions, to which the court responded, "No." The court did not attempt to ascertain the nature of Healey's questions, nor did it explain why it was denying Healey's request. During a short pause in between the questioning of prospective jurors in chambers, Healey asked the court "whether [the court's] ruling is that the attorneys are not allowed to ask any further questions or request to ask further questions is a standing ruling." The court responded, "Yes. The Court will inquire." The court did not provide any further explanation, and Healey never articulated, nor attempted to articulate, to the court the additional questions concerning domestic violence that he wished to ask prospective jurors during individual

6

voir dire. Two of the prospective jurors who were subjected to this individual voir dire were later assigned as final jurors.[5]

[¶7] Separately, after the court's initial voir dire into whether the prospective jurors knew any of the parties or witnesses involved in the case, Healey requested to ask the prospective jurors additional questions. In support of his request, Healey asserted that multiple prospective jurors "knew one or more of the witnesses," and that, although the prospective jurors affirmed that they could be fair and impartial, he still wanted "the opportunity for additional questioning." The court again denied Healey's request without explanation and without ascertaining what questions Healey might pose. Of the thirteen prospective jurors who indicated that they knew a witness or party, none were assigned as final jurors.

## B. Evidentiary Rulings

[¶8] On March 3, 2022, the State filed a motion in limine seeking to exclude, pursuant to Maine Rules of Evidence 402 and 403, (1) text messages sent by the victim to Healey after his arrest, (2) evidence that the victim had

---

[5] The first of these two jurors indicated that the juror's daughter experienced domestic violence nine years ago; that no prosecution occurred but the juror believed the alleged perpetrator was "served"; and the juror could still be fair and impartial. The second of these two jurors indicated that the juror's cousins experienced domestic violence thirty-five years ago, the juror was a child at the time and did not know if prosecution resulted, and the juror could be fair and impartial.

recanted an allegation of a domestic violence assault committed against her by another person,[6] and (3) evidence that Healey had double knee surgery. The court ruled on the State's motion before commencing trial, allowing evidence of Healey's double knee surgery and text messages that referenced the alleged assault by Healey. The court also allowed evidence of a single text message that the victim sent to Healey on the day of Healey's arraignment, which stated, "We're even," and included a winking-kissing emoji. The court excluded the remaining text messages and evidence of the victim's recanted allegation of domestic violence against another person, pursuant to Rule 403. The court indicated, however, that its rulings were "subject to change based upon how the evidence develops."

[¶9] During the trial, the court's evidentiary rulings evolved as the court suggested they might. While cross-examining the victim, Healey attempted to introduce evidence of text messages the victim sent to him, including the text message the victim sent him on the day of his arraignment. Upon objection by the State, the court ruled that all of the text messages were excluded pursuant to Rule 403. The court also denied Healey's request to reconsider its exclusion

---

[6] After the victim recanted her domestic violence assault allegation against the other person, that person was charged with, and ultimately pleaded guilty to, (1) tampering with a victim (Class B) pursuant to 17-A M.R.S. § 454(1-B)(A)(1) (2023); and (2) violation of condition of release (Class C) pursuant to 15 M.R.S. § 1092(1)(B) (2023).

8

of evidence of the victim's recanted domestic violence allegation in another case. The court later denied Healey's request to reconsider its exclusion of the victim's text messages to him. Despite the court's denial of Healey's second motion to reconsider its exclusion of some of the text messages, Healey successfully entered in evidence, during re-cross examination of the victim, one text message that the victim sent to him after his arrest.[7]

[¶10]  The jury returned a guilty verdict on March 7, 2022. On March 9, 2022, Healey was sentenced to 180 days in jail, with all but fourteen days suspended, and placed on probation for two years. Healey timely appealed.

## II.  DISCUSSION

### A.  Voir Dire

[¶11]  Healey argues that the court erred by failing to allow defense counsel to conduct voir dire examination of prospective jurors, as required by 15 M.R.S. § 1258-A, and by denying his attorney's requests to ask prospective jurors additional questions. Although we are unable to reach a majority opinion as to the issue Healey has raised regarding juror voir dire, we agree that the judgment should not be vacated on this basis and affirm the court's

---

[7]  In the text message, which the victim described as "sarcastic," the victim offered to "rub [Healey's] leg."

rulings on that issue without further discussion. We therefore turn to Healey's contentions concerning the court's evidentiary rulings.

## B.    Evidentiary Rulings

[¶12]  Healey argues (1) that the court abused its discretion by denying his request to cross-examine the victim about her recantation of a domestic violence allegation against another person and the text messages that she sent to Healey after his arrest, and (2) that these evidentiary rulings violated his constitutional rights to a jury trial and to confront witnesses against him.

[¶13]  We review a trial court's evidentiary rulings for clear error or abuse of discretion, reviewing determinations on relevancy for clear error and reviewing decisions on admissibility for an abuse of discretion. *State v. Filler*, 2010 ME 90, ¶ 14, 3 A.3d 365.  Pursuant to M.R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[¶14]  We conclude that the court did not abuse its discretion when it denied Healey's request to cross-examine the victim about her recanting a domestic violence allegation against another person.  Healey appears to have assumed that the victim would have admitted that she falsified her other

domestic violence allegation. Although evidence of the victim's recanted domestic violence claim may have been relevant, its probative value as to the witness's truthfulness or untruthfulness was minimal. *See State v. Ericson*, 2011 ME 28, ¶ 20, 13 A.3d 777. This evidence's probative value was substantially outweighed by the danger of confusing the issues for the jury.[8] *See id.* at ¶ 22. "[A]lthough we recognize that exposure of a complaining witness's motivation is a proper and important function of the constitutionally protected right of cross-examination," the court acted within its discretion under Rule 403 in excluding evidence of the victim's separate, recanted domestic violence claim. *Id.* (quotation marks omitted).

[¶15] The court, however, erred in excluding at least one of the victim's wide ranging text messages to Healey: the message stating, "We're even," which the victim sent to Healey on the date of his arraignment proceeding. Contrary to the State's contention, this evidence was relevant because it could have

---

[8] Even if the victim would have admitted on cross-examination that her domestic violence assault allegation against another person was false, given the tension between Maine Rules of Evidence 404(b) and 608(b), the probative value of the victim's recanted domestic violence claim would still be substantially outweighed by confusing the issue of the purposes for which that evidence could be used. Rule 608(b) states that "[t]he court may, on cross-examination, allow a party to inquire into specific instances of a witness's conduct if they are probative of the [witness's] character for truthfulness or untruthfulness." Rule 404(b), however, prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that" the victim acted the same way on this occasion. Thus, even under these circumstances, the court's exclusion of this evidence also would have been well within its discretion.

undermined the victim's credibility by causing the jury to question the victim's motivations for making accusations against Healey. Here, the trial court found that the prejudicial effect of the text message outweighed its probative value. Yet, "[w]hen the evidence in question is proffered by a defendant in a criminal proceeding, and it is the State that is arguing that admission of the evidence would unfairly prejudice the State's case, the defendant's right to confront and cross-examine the witnesses against him significantly circumscribes the court's discretion to exclude the evidence."[9] *State v. Graves*, 638 A.2d 734, 737 (Me. 1994). Healey had an interest in cross-examining the victim about this text message to call her motivations into question, and the court thus erred by excluding the message.

[¶16] When constitutional rights are at issue, such as the constitutionally protected right of cross-examination, "the appropriate . . . inquiry is whether, after review of the whole record, we are satisfied beyond a reasonable doubt that the error did not contribute to the verdict obtained." *State v. Warren*, 1998 ME 136, ¶ 17, 711 A.2d 851; *see* M.R.U. Crim. P. 52(a). Here, although evidence of the excluded text messages may have undermined the victim's credibility,

---

[9] This right is set forth in the Sixth Amendment to the United States Constitution, which guarantees the right of an accused in "all criminal prosecution . . . to be confronted with the witnesses against him," and Article 1, Section 6 of the Maine Constitution, which guarantees the right of the accused "[t]o be confronted by the witnesses against the accused."

there is sufficient, independent evidence in the record to support the jury's verdict. Specifically, the parties stipulated to the fact that Healey and the victim are family or household members. Moreover, the responding officer testified that the victim was grooming "clumps of hair out of her head" after the dispute. The jury's verdict is also supported by the admitted 9-1-1 call from a witness who observed the incident and this witness's testimony that Healey had grabbed the victim by the hair and pinned her against her car.[10] Therefore, even if the excluded text messages had been admitted at trial, we are satisfied beyond a reasonable doubt that such evidence would not have affected the jury's verdict.

The entry is:

Judgment affirmed.

---

Christopher S. Berryment, Esq. (orally), Mexico, for appellant Dana Healey

Alexandra Winter, District Attorney, and Ellex St. Pierre, Asst. Dist. Atty. (orally), Office of the District Attorney, Farmington, for appellee State of Maine

Franklin County Unified Criminal Docket docket number CR-2020-731
FOR CLERK REFERENCE ONLY

---

[10] In the recording, the witness told the dispatcher that a man had "put his hands on a woman." The witness's testimony was supported by his mother's testimony at trial, who was also on the 9-1-1 call.